**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MAKHI MONTGOMERY-SHAW,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOUTH ATLANTIC CONFERENCE & NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 2:26-cv-03145-BCL-tmp** |

**REPORT & RECOMMENDATION**

Before the court is *pro se* Plaintiff Makhi Montgomery-Shaw's Motion for Preliminary Injunction. (ECF No. 3.) Defendants South Atlantic Conference ("SAC") and National Collegiate Athletic Association ("NCAA") filed responses in opposition. (ECF Nos. 19, 20.)

On September 6, 2026, the presiding district judge entered an order referring all motions in this case to the undersigned magistrate judge, including but not limited to the Motion for Preliminary Injunction, for determination or report and recommendation, as appropriate. (ECF No. 7.) After providing notice to all parties, the undersigned conducted a preliminary

injunction hearing on September 23, 2026, and took the matter under advisement.[1] (ECF No. 25.)

On October 2, 2026, the SAC filed a supplemental response to Montgomery-Shaw's Motion for Preliminary Injunction, arguing that the court should dismiss Montgomery-Shaw's action under the doctrine of duplicative litigation. (ECF No. 33.) The SAC notified the court that Montgomery-Shaw "filed a nearly identical Complaint and Motion for Preliminary Injunction in the United States District Court for the Eastern District of California on August 27, 2026, against the exact same defendants at bar, one week before filing the instant case." (Id. at 129.) The SAC attached Montgomery-Shaw's motion for a preliminary injunction and the text order from the Eastern District of California denying that motion on August 28, 2026. (Id. at 145-53.)

Accordingly, the undersigned ordered Montgomery-Shaw to show cause why the court should not dismiss the instant case based on his prior filing of his Eastern District of California lawsuit. (ECF No. 35.) Montgomery-Shaw responded, stating: "Plaintiff respectfully disagrees with Defendant's contention that dismissal

[1]Because Montgomery-Shaw is representing himself *pro se* and is a college student currently enrolled at Fresno City College in California, the preliminary injunction hearing was conducted by video to accommodate the parties. Also, with consent of both defendants, Montgomery-Shaw's father was permitted to participate in the preliminary injunction hearing. Finally, Plaintiff agreed to be heard orally at the hearing in response to defendants' briefs, in lieu of filing a reply brief.

based on duplicative litigation is the appropriate disposition of this action. Plaintiff requests that the Court examine the circumstances surrounding the filing of this case. [His prior complaint] was improperly filed naming both Makhi Montgomery-Shaw and Carlos Shaw as Plaintiffs.” (ECF No. 36.) However, Plaintiff provided no further explanation as to why the instant lawsuit should not be dismissed.

For the reasons below, the undersigned recommends that Montgomery-Shaw’s complaint be dismissed without prejudice under the first-to-file rule. Alternatively, it is recommended that the complaint be dismissed without prejudice for improper venue, lack of subject matter jurisdiction, and lack of standing. Finally, it is recommended that Montgomery-Shaw’s Motion for Preliminary Injunction be denied as moot.

## I. PROPOSED FINDINGS OF FACT

During the summer of 2025, Montgomery-Shaw was a rising sophomore at Carson Newman University, a four-year college located in Jefferson City, Tennessee, which participates in Division II football in the SAC. (ECF No. 2 at PageID 2; ECF No. 19 at PageID 83-84.) The SAC is one of many conferences that compete within the NCAA. Montgomery-Shaw was a member of Carson Newman’s football team when, in July of 2025, he began experiencing severe allergies. (ECF No. 2 at PageID 2.) That summer, he had sinus cavity surgery at Vanderbilt Medical Hospital in Nashville, Tennessee. (Id.) This

surgery "altered his physical and mental ability to fully participate in the 2025 football season." (Id.) After the surgery, Montgomery-Shaw continued to experience allergy-related illnesses, including severe reactions to 37 allergens, dry cough, fatigue, mucus with blood, severe headaches, and sleeplessness. (Id. at PageID 2, 10.) As a result, Montgomery-Shaw stopped participating in football games at Carson Newman; he played his last game on September 13, 2025.[2] (Id. at PageID 2.)

According to Montgomery-Shaw, he satisfied the guidelines to be eligible for a Medical Hardship Waiver (also known as a medical redshirt) under the SAC's and NCAA's guidelines. (Id.) As a result, he sought a medical waiver so that his limited participation in the 2025-2026 season would not count against him for future athletic eligibility. From December 2025 through August 28, 2026, Carson Newman and the SAC received all required documentation regarding the procedures with the sinus cavity surgery, diagnoses and notes from doctors, communications to coaching staff from Plaintiff's parents, and letters from his surgeon. (Id.) Despite this documentation, the medical waiver was denied, which meant he

[2]Given the limited time to rule on this motion seeking emergency relief, this report and recommendation contains only a brief summary of Montgomery-Shaw's medical condition and procedural history of the medical waiver sought by Plaintiff. As explained below, the grounds for recommending denial of the Motion for Preliminary Injunction and dismissal without prejudice of this complaint are not based on the specifics of Plaintiff's medical condition or the denial of the medical waiver.

would lose one year of athletic eligibility at any NCAA institution.[3] (Id.) According to Montgomery-Shaw, the denial decision was inconsistent with the governing rules or was applied inconsistently, in violation of NCAA Division II Manual § 14.4.3.5 and § 14.4.3.7. (Id.) The SAC's denial of the waiver would later be appealed to the NCAA at the end of August 2026, which as of the date of this report and recommendation, remains pending before the NCAA. The NCCA states that it "is unable to provide an estimate for when Plaintiff's appeal will be adjudicated, as the number of pending waiver applications and appeals currently numbers in the thousands, and each must receive careful consideration." (ECF No. 31 at PageID 123-24.)

Meanwhile, sometime in or before August 2026, Montgomery-Shaw enrolled at Fresno City College, located in Fresno, California, seeking to participate in the school's football program. Fresno City College is a junior college that plays in the California Community College Athletic Association ("CCCAA"), which in turn is

[3]The SAC filed a declaration from Lindsey K. Babcock, the conference's Commissioner, explaining why Montgomery-Shaw's medical waiver was denied. (ECF No. 20-1 at PageID 102-03) ("Plaintiff's medical records demonstrated that he was never withheld from playing football by a qualified medical professional and that he was cleared to participate in football activities as of September 22, 2025. . . . Further, Plaintiff's records were signed by a [nurse practitioner], which does not satisfy the NCAA's requirements that the supporting medical documentation be signed by a physician, such as a Medical Doctor or Doctor of Osteopathic Medicine.").

a member of the National Junior College Athletic Association ("NJCAA"). (ECF No. 3.) It is undisputed that neither Fresno City College, the CCCAA, nor the NJCAA are members of or are affiliated with the SAC or NCAA. The NCAA has no governing authority over NJCAA eligibility determinations. (ECF No. 19 at PageID 84.) Even though Montgomery-Shaw is currently on the Fresno City College football team, he has not been cleared to participate in any football games. According to Plaintiff, the reason is because as a community college, Fresno City College allows only two years of football eligibility, and because he did not qualify for a medical waiver for his sophomore year at Carson Newman, he has no eligibility remaining to play for the community college. Apparently, this information was conveyed to Plaintiff by Fresno City College's compliance officer.[4]

Now, in seeking eligibility to play for Fresno City College, Montgomery-Shaw has filed a civil complaint against the NCAA and SAC, arguing that he was unlawfully denied a medical redshirt. (ECF No. 2 at PageID 4, 8.) In his complaint, Montgomery-Shaw asserts claims under Section One of the Sherman Act, Breach of Contract, and Tortious Interference. (Id. at 5.) Montgomery-Shaw

---

[4]It is not clear whether Plaintiff was told that he no longer has eligibility because he was denied the medical waiver by the SAC, or because the compliance officer at Fresno City College independently determined that Plaintiff lacks any further eligibility based on CCCAA guidelines, which in turn apparently relies on NCAA medical waiver guidelines.

has also filed a Motion for Preliminary Injunction, requesting the following relief from the court:

> 1) Temporarily enjoining SAC and NCAA from enforcing the challenged eligibility determination,
>
> 2) Directing SAC and NCAA to permit Makhi to participate in football practices and competitions while this action is pending, and
>
> 3) Alternatively, directing SAC and NCAA to reconsider Makhi's medical hardship waiver application.

(ECF No. 3.) The NCAA responded in opposition, arguing that Montgomery-Shaw: 1) cannot establish federal subject matter jurisdiction; 2) cannot establish personal jurisdiction; 3) improperly asks a federal court to exercise jurisdiction over athletic eligibility lawsuits; 4) fails to join a necessary and indispensable party; and 5) has not shown a likelihood of success on the merits. (ECF No. 19.) The SAC argues in their response, in addition to the grounds raised by the NCAA, that Montgomery-Shaw: 1) fails to satisfy the constitutional standing requirement of redressability; 2) does not have proper venue in the Western District of Tennessee; 3) cannot demonstrate a likelihood of success on the merits; and 4) cannot demonstrate that the balance of equities weighs in favor of granting a preliminary injunction. (ECF No. 20.)

After the preliminary injunction hearing, on October 2, 2026, the SAC filed a supplemental brief in opposition to the Motion for Preliminary Injunction. (ECF No. 33.) The SAC notified the court

that they had just learned that Montgomery-Shaw and his father had filed a nearly identical lawsuit against the SAC and NCAA on August 27, 2026.[5] The supplemental brief informed this court that Montgomery-Shaw had filed a motion for a preliminary injunction in the prior lawsuit, which District Judge Jennifer L. Thurston denied on August 28, 2026. According to the docket sheet, the case remains pending in the Eastern District of California. Neither Montgomery-Shaw nor his father disclosed this lawsuit or the denial of the preliminary injunction motion to this court during the September 23 preliminary injunction hearing.

## II. PROPOSED CONCLUSIONS OF LAW

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011); Kremer v. Unilever, PLC, No. 24-cv-01410, 2025 WL 2674556, at *6 (M.D. Tenn Sep. 18, 2025). Even so, *pro se* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Kremer, 2025 WL 2674556, at *6, and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th

[5]The SAC was not served with the Eastern District of California complaint at the time of this court's injunction hearing.

Cir. 2003); Wooden v. Lee, No. 24-cv-01052, 2025 WL 2678796, at *5 (W.D. Tenn. Sep. 18, 2025).

**A. Recommendation One: Dismissal Under the First-to-File Rule**

"The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016). "Simply stated, it provides that, 'when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment.'" Id. (internal quotations omitted) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007)) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). "In order for suits filed in different districts to be duplicative, they must involve 'nearly identical parties and issues.'" Id. (quoting Certified Restoration, 511 F.3d at 551). "While there is a paucity of Sixth Circuit case law explaining how to apply the first-to-file rule, courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." Id. "If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum

shopping,' merit not applying the first-to-file rule in a particular case." Id. (quoting Certified Restoration, 511 F.3d at 551-52).

Once it is determined that the first-to-file applies, a district court may dismiss the case; however, a district court may abuse its discretion in dismissing when "doing so could adversely affect a party's interests." Heyman v. Lincoln Nat'l Ins. Co., 781 F. App'x 463, 478 (6th Cir. 2019) (quoting Baatz, 814 F.3d at 793-94). In Baatz, the Sixth Circuit noted that the non-moving party "raised legitimate concerns about whether their claims will be heard in [the concurrent case]," including issues regarding class certification, the statute of limitations, and venue. Baatz, 814 F.3d at 794-95. "But 'few courts choose flatly to dismiss a second-filed suit, and in many of these cases the reason for dismissal is a court's inability to transfer.'" Mitchell v. Wells Fargo Bank, N.A., No. 2:20-cv-02444-TLP-atc, 2020 U.S. Dist. LEXIS 238542, at *13 (W.D. Tenn. Dec. 18, 2020) (quoting Steavens v. Elec. Data Sys. Corp., No. 07-14536, 2008 WL 5062847, at *2 (E.D. Mich. Nov. 25, 2008)).

The undersigned finds that Montgomery-Shaw has first filed a duplicative action in the Eastern District of California with nearly identical parties and issues. (ECF No. 33-2.) First, both complaints detail the same facts of the SAC denying his medical redshirt. Second, the parties in each complaint are the same, with

the only exception being Montgomery-Shaw's father, who serves as a co-plaintiff in the Eastern District of California action. Third, both complaints raise similar claims. Montgomery-Shaw's Eastern District of California complaint asserts a "Civil Rights Violation" and a "Sherman Anti-Trust Act" claim. (ECF No. 33-2 at PageID 148.) While his Eastern District of California complaint lacks breach of contract and tortious interference claims, both complaints hinge on the same underlying events and seek the same remedy of a medical redshirt, constituting similar issues. The undersigned finds no bad faith or misconduct on the part of the NCAA or SAC in the first-to-file context. As all three factors support application of the rule, and there are no relevant equitable considerations, the first-to-file rule precludes Montgomery-Shaw's action from proceeding in the Western District of Tennessee. Moreover, because dismissal of the present lawsuit would not adversely affect any party's interests, and a transfer would be improper for the reasons below, it is recommended that the instant complaint be dismissed without prejudice.

**B. Recommendation Two: Dismissal for Improper Venue**

Alternatively, the undersigned finds that the Western District of Tennessee is an improper venue for this lawsuit. "Courts faced with an argument that venue is improper must resolve that issue prior to addressing the merits of any claim, including a preliminary injunction." Proctor & Gamble Co. v. Ranir, LLC, No.

1:17-cv-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017) (citing Larson v. Galliher, No. 2:06-cv-1471, 2007 WL 81930 at *1, 2007 U.S. Dist. LEXIS 2069, at *3 (D. Nev. Jan. 5, 2007) ("Before reaching the merits of the cybersquatting allegation and corresponding request for injunctive relief, the Court must first decide the threshold issue if jurisdiction and venue is appropriate in this matter."); Baldwin Hardward Corp. v. Harden Industries, Inc., 663 F.Supp. 82, 86 (S.D.N.Y. 1987) ("In light of our disposition of the venue issue, we decline to reach the merits of [plaintiff's] motion for a preliminary injunction."); Budd Co. v. United States Dep't of Transp., 89 F.R.D. 555, 556 (E.D. Pa. 1981) ("Before this court can consider the merits of Budd's claim, particularly its motion for preliminary injunction, it must address and decide the defendants' alternative motion to dismiss or transfer this action due to improper venue.")).

The general venue rules are codified at 28 U.S.C. § 1391(b). Tobien v. Nationwide General Ins. Co., 133 F.4th 613, 618 (6th Cir. 2025). "That statute lets plaintiffs sue in three main places: where a defendant resides, where a substantial part of the events happened, or if neither of those works, wherever personal jurisdiction is available." Id. Specifically, § 1391(b) states:

> A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

First, it is undisputed that neither the NCAA nor SAC is a resident of Tennessee. The NCAA is "an unincorporated association . . . not organized under the laws of any state, but its principal place of business-its headquarters-is in Indiana." (ECF No. 19.) The SAC is a registered charity organization under the laws of South Carolina, with its address listed as 226 Northpark Dr. Suite 130 Rock Hill, SC 29730-4292. See South Carolina Secretary of State's Charity Search Webpage, South Atlantic Conference. As such, § 1391(b)(1) does not provide for venue in the Western District of Tennessee. Second, in evaluating where a substantial part of the events occurred, none of the relevant events underlying Montgomery-Shaw's case took place in the Western District of Tennessee. Montgomery-Shaw's claims hinge upon his medical condition and his time at Carson Newman (located in the Eastern District of Tennessee), the NCAA's and SAC's alleged involvement in improperly denying his medical waiver, and his ineligibility to play football at Fresno City College. All of these events occurred

outside the Western District of Tennessee. Accordingly, § 1391(b)(2) does not provide for venue in the Western District of Tennessee. And third, based on the limited record before the court, § 1391(b)(2) would apply to the Eastern District of Tennessee, and thus § 1391(b)(3) cannot support venue in the Western District of Tennessee. "[W]hen a defendant challenges the venue, the plaintiff bears the burden of proving venue by a preponderance of the evidence." Tobien, 133 F.4th at 619. Montgomery-Shaw has not met this burden.

28 U.S.C. § 1406(a) applies to actions brought in an improper venue, and states that the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The decision to dismiss or transfer rests within the district court's discretion. First of Michigan Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998).

The undersigned submits that it would not be in the interest of justice to transfer this case to the Eastern District of Tennessee because it would lack subject matter jurisdiction. "To bring suit in federal court, a plaintiff must establish subject matter jurisdiction through either federal question jurisdiction or diversity jurisdiction." Gilbert v. Henry Ford Hosp., No. 25-2031, 2026 U.S. App. LEXIS 9356, at *2 (6th Cir. Mar. 31, 2026). Under 28 U.S.C. § 1331, "[t]he district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, "federal-question jurisdiction exists only when a plaintiff pleads a valid claim arising under federal law." Edwards v. JP Morgan Chase Bank, N.A., No. 25-cv-11957, 2026 WL 1486814, at *2 (E.D. Mich. Apr. 27, 2026) ("Edwards asserted only one claim arising under federal law: his meritless CFPA claim."); see also Gause v. Baptist Mem'l Hosp., 3 F. App'x 395, 396 (6th Cir. 2001) ("Gause's argument that the district court had federal question jurisdiction because the case involves a constitutional right is without merit. Gause has still failed to identify any provision of the United States Constitution that could apply to this wrongful death claim.").

28 U.S.C. § 1332 governs when a district court has diversity jurisdiction over an action, stating:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
>
> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332. "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). "With regard to injunctions and declaratory judgments, '[i]t is well established that the amount in controversy is measured by the value of the object of the litigation.'" Mt. Hawley Ins. Co. v. Packers Sanitation Servs., No. 1:06CV2569, 2007 WL 1959216, at *2 (N.D. Ohio June 22, 2007).

Montgomery-Shaw's complaint contains only one, brief reference to any federal cause of action: "Sherman Act § 1 – unreasonable restraint of trade." (ECF No. 2 at PageID 5.) The court finds that this mere reference to the Sherman Act, without any factual allegations whatsoever to support this claim, fails to invoke federal question jurisdiction. See Ford v. Hamilton Inv., Inc., 29 F.3d 255, 258 (6th Cir. 1994) (stating that "[m]erely referring to a federal statute, however, does not establish federal jurisdiction if the dispute does not involve 'a substantial question of federal law.'"). The court also lacks diversity jurisdiction, as no amount in controversy has been pled on the face of the complaint. Because the court lacks subject matter jurisdiction, it would be improper to transfer venue, and as venue is improper here, Montgomery-Shaw's complaint should be dismissed.

Further, the lack of subject matter jurisdiction alone provides a sufficient basis to dismiss Montgomery-Shaw's complaint.

Additionally, Montgomery-Shaw lacks standing. "Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citations omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of establishing' standing." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 412 (2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

"Because redressability is an 'irreducible' component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." Uzuegbunam v. Preczewski, 592 U.S. 279, 291 (2021) (citations and quotations omitted). "But '[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power.'" Haaland v. Brackeen, 599 U.S. 255, 294 (2023) (quoting Franklin v. Massachusetts, 505 U. S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment) (emphasis in original)). "Otherwise, redressability would be satisfied whenever

a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'" Id. (quoting Carney v. Adams, 592 U.S. 53, 58 (2020)). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." Id. "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties*.'" Trump v. CASA, Inc., 606 U.S. 831, 851 (2025) (emphasis in original). "While party-specific injunctions sometimes 'advantag[e] nonparties,' they do so only incidentally." Id. (citations omitted).

Here, Montgomery-Shaw lacks standing because he seeks relief from a party not before the court. In concluding his Motion for Preliminary Injunction, Montgomery-Shaw writes:

> For these reasons, Makhi Shaw respectfully requests that the Court grant this Motion for Preliminary Injunction and enter an order temporarily permitting Makhi to participate by playing intercollegiate football at Fresno City College, subject to applicable medical-clearance and legitimate safety requirements, while Plaintiffs claims are adjudicated.

(ECF No. 3.)

The ultimate gatekeeper of Montgomery-Shaw's eligibility is not the SAC or NCAA; it is either Fresno City College, the CCCAA, or the NJCAA. These institutions are not parties before the court. Thus, even if Montgomery-Shaw were to prevail on any of his claims against the SAC or NCAA, the court could not provide the relief

that he seeks in his complaint. Montgomery-Shaw's injury of being unable to play football at Fresno City College is not "likely to be redressed by a favorable judicial decision." See Spokeo, Inc., 578 U.S. at 338.

**C. Recommendation Three: Denial of Motion for Preliminary Injunction**

In reviewing a request for a preliminary injunction, "district courts consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff in the absence of an injunction; (3) the risk that an injunction will harm others; and (4) the broader public interest." PCC Airfoils, LLC v. Daugherty, 176 F.4th 509, 512-13 (6th Cir. 2026). Given that the undersigned recommends dismissing Montgomery-Shaw's complaint for the aforementioned reasons, the undersigned also recommends that Montgomery-Shaw's Motion for Preliminary Injunction be denied as moot. See Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC, 184 F. Supp. 3d 572, 580 (W.D. Ky. 2016) ("In light of the Court's disposition of the motion to dismiss, the motion for preliminary injunction is now moot and will be denied.").

**III. RECOMMENDATION**

For these reasons, the undersigned recommends that Montgomery-Shaw's complaint be dismissed without prejudice under the first-to-file rule. Alternatively, it is recommended that the

complaint be dismissed without prejudice for improper venue, lack of subject matter jurisdiction, and lack of standing. Finally, it is recommended that Montgomery-Shaw's Motion for Preliminary Injunction be denied as moot.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 16, 2026
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**